# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### SOUTHERN DIVISION
#### AT LONDON

**BRYAN KERR DICKSON,**

      **Plaintiff,**

**v.**

**UNITED STATES OF AMERICA,**

      **Defendant.**

**CIVIL ACTION NO. 6:16-CV-29-KKC**

**MEMORANDUM OPINION
AND ORDER**

*** *** ***

Plaintiff Bryan Kerr Dickson is an inmate confined by Bureau of Prisons ("BOP") in the Federal Correctional Institution-Marianna, located in Marianna, Florida. Dickson has filed a *pro se* civil rights complaint [R. 1] in which he asserts various claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. Dickson has named the United States of America as the defendant to this action.

Dickson has also filed a motions asking that this action be filed under seal [R. 2];[1] that he be appointed counsel [R. 3]; and that he be granted permission to proceed *in forma pauperis* [R. 5]. As explained below, Dickson's motion to proceed *in forma pauperis* will be denied pursuant to 28 U.S.C. § 1915(g), because Dickson has filed at least three other federal civil actions which have been dismissed as frivolous, and because Dickson does not allege in his complaint that he faces imminent danger of serious physical injury, which is the required showing to obtain pauper status under § 1915(g). Dickson will be required to pay the $400.00

---

[1] On February 16, 2016, the Clerk of the Court conditionally placed this proceeding under seal, pending an order addressing the merits of Dickson's motion.

civil filing fee, in full, within twenty-one (21) days of the date of entry of this Order if he wishes to proceed with the claims asserted in this action.  Dickson's other two motions, asking to seal this action and to be appointed counsel, will also be denied.

### DICKSON'S "THREE STRIKES" STATUS

Title 28 U.S.C. § 1915(g) prohibits prisoners from proceeding *in forma pauperis* when they have abused their pauper status by filing three or more civil lawsuits which have been dismissed as frivolous, malicious, or which fail to state a claim upon which relief may be granted.  That statute provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Dickson is subject to the §1915(g)'s "three strikes" bar, a fact that has been established in not one, but two, prior civil proceedings which Dickson filed in federal courts in Oklahoma and Arizona.  On March 10, 2015, the district court in Oklahoma denied Dickson pauper status in an FTCA action which Dickson had filed in October 2014, noting in its order that Dickson's eligibility for pauper status had not been immediately ascertainable at the outset of the case, because several of Dickson's cases had been filed under seal, but that Dickson had admitted that he was subject to the three strikes' rule, and that Dickson asserted claims concerning past harms, not claims alleging that he was facing imminent danger of serious physical injury as required by § 1915(g).  *See Bryan Kerr Dickson v. United States of America*, No. 5:14-CV-01108-C (W. D. Okla. 2014) ("the Oklahoma FTCA Action") [R. 20, therein] When Dickson failed to pay the assessed civil filing fee within the specified time, the district court dismissed the Oklahoma FTCA Action on April 7, 2015, again noting that Dickson "…

2

was aware that he was subject to the three strikes rule when he filed this action." *See id*. R. 25, pp. 1-2, therein.

On November 13, 2015, the district court in Tucson, Arizona denied Dickson pauper status in an FTCA action which Dickson had filed in that court in October 2014. *See Dickson v. United States*, No. 04-CV-02444-CKJ-PSOT (D. Ariz. 2014) ("the Arizona FTCA action") [R. 38, therein]  In its order, the district court noted that Dickson had previously <u>admitted</u> in the Oklahoma FTCA Action that he was subject to § 1915(g)'s three-strike rule; that in the Arizona FTCA action, Dickson had again alleged claims of <u>past</u> harm, not claims that he was facing imminent danger of serious physical injury; and that Dickson's allegation that he was receiving death threats to his life was too vague and conclusory to establish that he was facing imminent danger of serious physical injury under § 1915(g).  [*Id*., pp. 3-5, therein]

In that same order, the Arizona district court also denied Dickson's motion to place under seal certain documents which he had filed in response to a Show Cause Order.  [*Id*., pp. 5-6, therein]  The district court explained that the policy of promoting access to publically filed documents is strong, and that good cause or a compelling reason must exist before restricting public access to court documents, but that Dickson had not demonstrated any reason to seal his various pleadings.  [*Id*.]

Thus, it has been established in both the Oklahoma FTCA action and the Arizona FTCA action that Dickson is subject to the three-strikes bar set forth in § 1915(g).  This Court now addresses whether, given Dickson's status vis-à-vis § 28 U.S.C. 1915(g), has he sufficiently alleged in <u>this</u> action that he faces imminent danger of serious physical injury. Such an allegation would qualify Dickson for the exception to the "three strikes" bar of § 1915(g), and allow him to proceed *in forma pauperis* in this FTCA proceeding.

## ALLEGATIONS OF THE COMPLAINT

Dickson devotes to the first three pages of his FTCA complaint to making broad and general statements about governmental liability.  Further into his complaint, Dickson alleges that on an unspecified date, he was assaulted, battered, falsely arrested, and was the victim of abuse of process and intentional infliction of emotional distress.  [R. 1, p. 3, ¶ 8]  Dickson broadly alleges that he was the victim of false arrest because he was held in the "SHU" (presumably, the segregated housing unit) of an unidentified prison "longer than required." [*Id.*, p. 4, ¶ 17]  Dickson claims that by ordering his transfer from the United States Penitentiary ("USP") Tucson to the USP-MCreary (which is located in Pine Knot, Kentucky) in March 2014, the United States caused him to be assaulted and battered.  [*Id.*, p. 5, ¶ 23]

Dickson next alleges that while confined in the USP-Hazelton, the staff seized or confiscated his "jailhouse lawyer manual," his pens, address information, personal pictures, and various administrative remedy papers, rendering him unable to comply with the Bureau of Prison's administrative remedy process.  [*Id.*, ¶ 25]  In the following numerical paragraph, Dickson alleges that while he was being escorted to his cell in the SHU, several prisoners "on the range" assaulted him."  [*Id.*, ¶ 26]  In that passage, Dickson does not specify <u>where</u> this alleged assault occurred (*i.e.*, in which federal prison it alleged occurred) or <u>when</u> it allegedly occurred.

Later, Dickson alleges that he was assaulted on April 20, 2014, when he was forced to "…go out to Rec Cages during a shakedown…."  [*Id.*, ¶ 30]  Because Dickson had stated earlier in his FTCA complaint that he was transferred to USP-McCreary in March 2014, the alleged assault described in Paragraph No. 28 may have occurred in USP-McCreary, but it is unclear whether the alleged assaults described in Paragraph Nos. 26 and 30 were two separate

incidents, or one in the same.  Dickson again reiterates that by sending him "out to the rec cages against his will," the United States caused him to be assaulted.  [*Id.*, p. 6, ¶ 32][2]

Dickson then describes several deprivations to which he claims he has been subjected, which are:  (1) the denial of his prescription eyeglasses for an eighteen- month period, beginning on June 27, 2012; (2) the denial of upper and lower case dentures and/or being provided with a "soft diet" in the absence of dentures; and (3) an evaluation by an orthopedic specialist and surgery to replace of both of his knees.[3]  [*Id.*, ¶¶ 27-29]  Dickson does not identify the federal prison(s) in which he was confined when he experienced these alleged deprivations.

In the final paragraph of his complaint, Dickson alleges that his Unit Team Counselor at an unidentified prison failed and/or refused to provide him with the forms needed to pursue his administrative remedies and to provide him with mental health treatment.  [*Id.*, p. 6, ¶ 34]

In the section of his Complaint captioned as "Relief Requested," Dickson states that he wishes to be placed "… in a **SAFE ENVIRONMENT SO THAT DICKSON CAN DO HIS TIME WITHOUT FEARING FOR HIS LIFE EVERYDAY!**"  [*Id.*, ¶ (A) (bold and capital letters in original)].  Dickson also seeks an order requiring the BOP to provide him with proper dental treatment and dentures; proper orthopedic treatment and knee replacement surgery; release from federal custody; $2.6 million in damages; and his court costs and attorney fees.  [*Id.*, ¶¶ (B)-(G)].

---

[2]  Dickson numbered this paragraph (at the top of page six of his complaint) as No. 32, but he apparently skipped number "31," because he numbered the preceding paragraph (at the bottom of page five of his complaint) as No. 30.  No paragraph #31 is found in Dickson's complaint.

[3] Dickson alleges that he "… has been told by Six Different Institutional Doctor [sic] that Dickson needs **DOUBLE KNEES RELPLACEMENT BUT THE DEFENDENTS [sic] REFUSE TO DO THEM**."  [*Id.*, p. 5, ¶ 29 (bold and capital letters in original)]

**DISCUSSION**
**1.  Dickson's Motion to Proceed *In Forma Pauperis* [R. 5]**
**(Analyzed under 28 U.S.C. § 1915(g))**

In his FTCA complaint, Dickson asserts a myriad of claims; however, none of these claims even remotely suggest that when Dickson filed this action on February 16, 2016, he was facing "imminent danger of serious physical injury" as described in 28 U.S.C. § 1915(g). The alleged incidents about which Dickson complains (assault(s) by other inmates; excessive confinement in the SHU; confiscation of his pens, pencils, pictures, and administrative remedy paper; the denial of prescription eye glasses; and the denial of requests for knee replacement surgery) occurred in the past, and therefore do not suffice as claims alleging imminent danger of serious physical injury, which is the standard set forth in § 1915(g).

The word "imminent" necessarily implies that the alleged injury is yet to come in the future, not grounded in events of the past.  In choosing the word "imminent," Congress intended to convey the sense of immediacy or something on the point of happening, not an event which transpired in the past.  *Censke v. Smith*, No. 1:07-CV-00691, 2007 WL 2594539 at *3 (W.D. Mich. September 4, 2007).  To circumvent the filing fee restrictions in § 1915(g), a prisoner must allege that the threat or prison condition is "real and proximate" and that the danger of serious physical injury exists at the time the complaint is filed.  *See Rittner v. Kinder*, 290 F. App'x 796, 797–98 (6th Cir. 2008) (citing *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001) (*en banc*)).  A prisoner's assertion that he faced danger in the past is insufficient to invoke the exception. *Id.*; *Cage v. Michigan Dep't. of Corr.*, No. 2:10-CV-13797 (E. D. Mich. Oct 22, 2010); *Tucker v. Ludwick*, No. 09-CV-13247, 2009 WL 2713950, at *2 (E.D. Mich. Aug. 26, 2009).  Thus, to the extent that Dickson's complains about alleged events or deprivations which occurred in the

past, even an assault, he does not allege facts substantiating that he faces the "imminent danger" of serious physical injury.

Dickson alleges that the lack of both upper and lower dentures renders eating a challenging process. That description may be accurate, but even so, his allegation does not amount to a claim of imminent danger of *serious physical injury*, which is a much higher threshold than mere inconvenience. Next, Dickson again fails to state facts demonstrating how the alleged denial of prescription eyeglasses, while possibly inconvenient, subject him to imminent danger of *serious physical injury*. Finally, Dickson alleges that he suffers from knee problems and bone spurs that require knee replacement surgery to correct, but as noted, Dickson also alleges that six BOP doctors have previously denied his requests for knee replacement surgery. Thus, on this issue, Dickson alleges no new facts suggesting that he faces imminent danger of s*erious physical injury* based on the BOP's refusal to authorize the knee replacement surgery, which Dickson again demands. Where a prisoner has only broadly complained about allegedly deficient medical treatment from prison officials, but has not alleged that the complained-of medical treatment actually subjects him to imminent danger of serious physical injury, this Court has held that such claims do not fall within § 1915(g)'s exception, and that the prisoner must pay the full civil filing fee if he wishes to proceed with his constitutional claims. *See Lang v. Thomspon*, No. 5:10-CV-379-HRW, 2010 WL 1962933, at *3 (E. D. Ky. Nov. 30, 2010).

Finally, Dickson alleges in broad and conclusory fashion that he needs to be in a "safe environment" to serve his federal sentence, "without fearing for his life." [R. 1, p. 6, ¶ (A)] However, this Court can do nothing to provide Dickson with a safe environment, because Dickson is currently confined in the FCI-Marianna, which is located in Marianna, Florida. If Dickson believes that his physical safety is in jeopardy, he may submit administrative grievances to the staff at FCI-Marianna; appeal any adverse decisions to the BOP's Southeast

7

Regional Office; and, if dissatisfied with the result of the administrative remedy process, file a civil rights action in the United States District Court for the Northern District of Florida. Dickson's' broad allegation that he fears for his life does not implicate the imminent danger exception of § 1915(g).

Because none of Dickson's claims fall into the exception to the "three strikes" rule set forth in § 1915(g), Dickson's motion to proceed *in forma pauperis* [R. 5] will be denied, and Dickson must pay the entire $400.00 in full if he wishes to proceed with this action.

Further, Dickson will not be relieved of the filing fee obligation even if this action is summarily dismissed for non-payment of the filing fee. *In re Alea*, 286 F.3d 378 (6th Cir. 2002). In *Alea*, the Sixth Circuit held that dismissal of an action under § 1915(g) for failure to pay the filing fee does not negate or nullify the prisoner's continuing obligation to pay the fee in full. *Id.* at 381. The court explained that "not requiring the payment of the full fee would permit a prisoner subject to the three-strikes rule to continue to file frivolous civil complaints - thus taking much valuable time away from other non-frivolous litigation - without any consequence beyond their mere dismissal under § 1915(g)." *Id.* at 382; *see also Hunter v. Helton*, No. 1:10-CV-21, 2010 WL 1426221, at *4 (M. D. Tenn. Apr. 8, 2000) (warning prisoner-plaintiff that he would not be relieved of paying the full assessed civil filing fee based on *Alea*). This rule certainly applies to Plaintiff Bryan Kerr Dickson.

**2. Dickson's Motion to Seal this Proceeding [R. 2]**

Dickson seeks an order directing that all pleadings in this proceeding be filed under seal, stating that he has received "...**NUMEROUS WRITTEN AND VERBAL DEATH Threats, INTERMITENT DANGER TO DICKSON'S LIFE**...." based on "numerous assault and/or battery as mention in the above Mention Case." [R. 2 (capital letters and bold in original)] Dickson states that he "feels if this Case is not Seal [sic] Dickson will get

**SERIOUSLY HURT OR KILLED**." [*Id.* (capital letters and bold in original)]  As noted, the Clerk of the Court has conditionally placed Dickson's pleadings under seal pending further directions from the Court, but the Court determines that an order permanently sealing this record is unwarranted, and will therefore instruct the Clerk to unseal this proceeding.

A district court "has supervisory power over its own records and files." *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 598 (1978). This authority includes fashioning protective orders that limit access to certain court documents. See Fed. R. Civ. P. 26(c). But a district court's power to seal records is subject to the "long-established legal tradition" of open access to court documents. *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983).  As explained in *In re Knoxville News–Sentinel Co., Inc.*, 723 F.2d 470 (6th Cir. 1983), a "presumptive right" of public access to court records exists, which permits inspection and copying.

Access has been denied where the court files could become a vehicle for improper purposes, such as disclosure of the gory details of a divorce case.  *Id.*  The principles compelling access to records of criminal proceedings apply as well to civil proceedings. *Brown & Williamson*, 710 F.2d at 1178-79. The desire to shield prejudicial information contained in judicial records from the public "cannot be accommodated by courts without seriously undermining the tradition of an open judicial system."  *Id.* at 1180.  A district court's discretion to seal the record of a proceeding "'is to be exercised charily.'"  *S.E. C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (quoting *Federal Savs. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987)). Public access to judicial records "'serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness.'"  *Id.* at 849 (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)).

Dickson unsuccessfully made the same request in both the Oklahoma FTCA Action and the Arizona FTCA Action.  On November 15, 2015, the Arizona district court noted that because many of Dickson's prior prisoner civil actions had been filed under seal, it was initially unable to determine whether Dickson qualified for pauper status in the Arizona FTCA Action.  After the district court later learned (months after Dickson had filed the Arizona FTCA Action) that Dickson did **not** in fact qualify for pauper status under § 1915(g)--based on his history of filing frivolous civil actions--the district court then revoked Dickson's pauper status, assessed the entire $400 filing fee, and denied Dickson's motion to seal the Arizona FTCA Action.  The district court concluded that Dickson had not demonstrated a compelling reason to keep the case filed under seal.

In the Oklahoma FTCA Action, Dickson asked that his case be kept under seal, asserting the same grounds which he asserts in this action, *i.e.*, that if the Oklahoma FTCA Action was not sealed, he "will get seriously hurt or killed, due to [his] charges and his past experiences."[4]  *See Dickson v. United States*, No. 5:14-CV-01108-C (W.D. Okla.) [R. 6, therein] (capitalization altered and emphasis omitted)  That court promptly denied Dickson's request to seal the Oklahoma FTCA Action, stating:

> Here, Plaintiff's [Dickson] sparse, conclusory allegations as to his ongoing safety concerns are insufficient to establish that sealing of this entire case is warranted.
> ….
>
> Further, even assuming Plaintiff's status as a sex offender presents a general threat to his safety, Plaintiff does not explain how this threat would be mitigated through sealing this entire case…. Thus, the Court is not persuaded that any competing interests exist sufficient to warrant restricting the public's access entirely from this proceeding and its records.  Accordingly, Plaintiff's Motion to Seal Records (Doc. No. 6) is denied without prejudice.

---

[4]  The "past experiences" which Dickson described in the Oklahoma FTCA Action consisted of an alleged sexual assault against him in November 2009 by an inmate at the Federal Transfer Center ("FTC") in Oklahoma City, Oklahoma.  As the district court noted, however, Dickson was no longer confined in the FTC-Oklahoma City when he filed the Oklahoma FCTA Action.

10

*Id*, R. 7, pp. 2-3 therein.

Here, Dickson merely recycles his prior motions by asking to keep *this* FTCA proceeding under seal, based on the same broadly worded allegations of harm which two other district courts have recently rejected. Dickson provides no specific facts to substantiate his claim that he faces danger to his life, or that he will be "seriously hurt or killed" if this case is not sealed. Further, as previously discussed, Dickson is not even confined in a federal prison located in the district. As he failed to do in both the Arizona FTCA Action and in the Oklahoma FTCA Action, Dickson again utterly fails to establish how placing the instant proceeding under seal will prevent the harm which allegedly faces. Further, keeping this action filed under seal may prevent another district court from ascertaining, in the future, that Dickson has acquired three strikes under § 1915(g), **and** that he has repeatedly tried to protect his actions from judicial scrutiny by asking that his FTCA actions be filed under seal. The Court determines, in its exercise of discretion, that Dickson has not alleged a valid reason for keeping this action filed under seal. Dickson's motion to seal this action [R. 2] will be denied, and the Clerk of the Court will be instructed to **unseal** this proceeding.

### 3. Dickson's Motion for the Appointment of Counsel [R. 3]

Dickson seeks the appointment of counsel, stating that he is imprisoned, that he possesses limited knowledge of the law, and that his claims are complex and will require "significant research and investigation." [R. 3] Dickson's motion requesting the appointment of counsel will also be denied.

The appointment of counsel in a civil proceeding is justified only in exceptional circumstances. *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996). To determine whether exceptional circumstances exist, a district court must consider the complexity of the factual and legal issues presented, and determine whether fundamental unfairness, impinging on due the right to due process, would result in denying a motion for appointment of counsel.

11

*Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993). A district court enjoys complete discretion to grant or deny such a motion. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992).

Here, Dickson asserts several straightforward claims and has adequately conveyed the relevant facts and legal bases for them, and he also cites numerous statutes and cases. And as noted, Dickson has filed several other FTCA actions in other federal courts,[5] so he possesses a general knowledge about the federal litigation process. The Court is not persuaded that exceptional circumstances exist in this FTCA proceeding, or that denying Dickson's motion seeking the appointment of counsel would deprive him of due process of law. Dickson's motion seeking appointment of counsel [R. 3] will therefore be denied.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

1. Plaintiff Byran Kerr Dickson's motion to seal the record [R. 2] is **DENIED** and the Clerk of the Court **SHALL UNSEAL** this proceeding.

2. Dickson's motion seeking the appointment of counsel [R. 3] is **DENIED**.

3. Dickson's motion to proceed *in forma pauperis* [R. 5] is **DENIED** pursuant to the "three strikes" provision of 28 U.S.C. § 1915(g).

4. If Dickson intends to proceed with this FTCA action, he must pay the requisite $400.00 filing fee to the Clerk of this Court within **twenty-one (21) days** of the date of entry of this Order. If Dickson does not pay the full $400 filing fee within **twenty-one (21) days** of the date of entry of this Order, the Court will dismiss this FTCA action without prejudice for failure to prosecute.

---

[5] One of Dickson's 28 U.S.C. § 1331 civil rights cases, which he filed in September 2014, is currently pending in a Pennsylvania federal court. *See Bryan Kerr Dickson*, No. 1:14-CV-01784-YK-GS (M.D. Pa. 2014) (last docket entry, R. 54, therein, was filed on March 2, 2016).

5.   If this case is dismissed for failure to prosecute, it will not be reinstated even if Dickson subsequently pays the entire filing fee. *McGore v. Wrigglesworth*, 114 F.3d 601, 605 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

6.   If Dickson fails to pay the $400.00 filing fee, he will not be relieved of his filing fee obligation, which will be assessed against him even if this case is dismissed for want of prosecution. *In re Alea*, 286 F.3d 378, 382 (6th Cir. 2002).

7.   Upon either the payment of the $400.00 filing fee or the expiration of the twenty-one day compliance deadline set forth in Paragraph 4 herein, whichever event occurs first, the Clerk of the Court shall submit the record.

Dated March 3, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

13